IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ROHIT SANDHU,

                Petitioner,                                            7:26CV5009

        vs.

                                                             MEMORANDUM AND ORDER

MARKWAYNE MULLIN, Secretary,
Department of Homeland Security; PAMELA
BONDI, Attorney General, Executive Office for
Immigration Review; TODD M. LYONS, Acting
Director, Immigration and Customs Enforcement
(ICE); DAVID EASTERWOOD, Field Office
Director, St. Paul ICE; and
WARDEN/FACILITY ADMINISTRATOR,
MCCOOK ICE IGSA,

                Respondents.

        This matter is before the Court on Petitioner Rohit Sandhu's petition for a writ of habeas corpus. (Filing No. 1). Sandhu, a noncitizen facing removal from the United States, is detained by U.S. Immigrations and Customs Enforcement. He alleges his due process rights were violated when he was re-detained after being released on conditional parole under 8 U.S.C. § 1226(a). For the reasons set forth below, his petition will be granted.

## BACKGROUND

        Sandhu is an Indian national and citizen. (Filing No. 1 at 1). He entered the United States near San Luis, Arizona, in January 2022. (Filing No. 1 at 1). Just days after his arrival, United States Border Patrol arrested Sandhu. (Filing No. 1 at 1, Filing No. 7 at 3). Border Patrol served Sandhu with a Notice to Appear initiating removal proceedings against him and released him on his own recognizance on Form I-220A. (Filing No. 1 at 1-2, Filing No. 1-2). Sandhu's release was

subject to several "conditions[.]" (Filing No. 1-2 at 1). One was Sandhu "must not violate any local, State, or Federal laws or ordinances." (Filing No. 1-2 at 1). Failure to comply with those conditions, the Order of Release on Recognizance warned, "may result in revocation of your release and your arrest and detention by the Department of Homeland Security." (Filing No. 1-2 at 1). Sandhu applied for asylum in the United States around eight months later and secured work authorization in 2023. (Filing No. 7 at 3).

While driving his commercial vehicle through Iowa in February 2026, Sandhu failed to stop at a weigh station. (Filing No. 1 at 2). Iowa DOT cited him for that. (Filing No. 1 at 2). U.S. Immigration and Customs Enforcement (ICE), presumably after learning of the citation, arrested and detained Sandhu the same day. (Filing No. 1 at 2). ICE also served Sandhu with a new Notice to Appear. (Filing No. 7-1). At some point, ICE transferred Sandhu to the "McCook ICE Detention IGSA" in McCook, Nebraska, where he remains. (Filing No. 1 at 2).

Sandhu sought release on bond during the pendency of his removal proceedings. (Filing No. 1 at 2). The immigration judge denied his request, reasoning that she lacked jurisdiction to issue a bond under *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) and then found in the alternative that Sandhu "is a danger to the community" and "poses a significant flight risk" because "[h]e has been in the United States for a short time and has limited ties to the United States." (Filing No. 1-3 at 1).

This petition for a writ of habeas corpus followed. Sandhu alleges his detention is unlawful on several constitutional grounds and seeks "immediate release on his prior release conditions." (Filing No. 1 at 15). The Court directed Sandhu to serve his petition on Respondents (Filing No. 3) and ordered Respondents to file a return on the petition within three business days of service to show cause why the petition should not be granted. The Federal Respondents[1] did so (Filing No. 5) and Sandhu replied (Filing No. 8). The parties agreed to waive a hearing, and the Court considered the matter submitted on their written arguments. *See* § 2243.

---

[1] The Federal Respondents include all but the Warden of the McCook Detention Center. (Filing No. 5 at 3 n.1). The Warden filed a separate response taking no position on "on the substantive issues raised in the Petition" or whether "Petitioner's writ should or should not be granted." (Filing No. 10 at 2).

**STANDARD OF REVIEW**

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). The Court's jurisdiction to hear habeas challenges extends to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under 28 U.S.C. § 2241, a district court can grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Sandhu bears the burden to show that he is in custody in violation of the law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

**DISCUSSION**

Relying on cases like *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026) and *Boubacar v. Blanche*, 2026 WL 972708 (D. Neb. Apr. 10, 2026), the Federal Respondents argue Sandhu cannot make such a showing. (Filing No. 5 at 1). As the Court recognized in *Boubacar, Avila* "forecloses" any argument Sandhu may have had that he is entitled to a bond hearing under 8 U.S.C. § 1226. 2026 WL 972708, at *3. Sandhu does not dispute as much. (Filing No. 8 at 3). But *Avila* left open, he says, whether his re-detention comports with due process. *See* 170 F.4th at 1141 n.8. The Court agrees on that score. *Boubacar,* 2026 WL 972708, at *3.

Sandhu's lead argument is that his re-detention without being afforded "a meaningful opportunity to challenge th[e] decision [to revoke his order of release on recognizance] violates due process." (Filing No. 8 at 6). The Due Process Clause prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V.  It applies to all "'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 694 (2001). Procedural due process claims "are examined under a two-part test: 'whether there exists a liberty or property interest which has been interfered with by the government'; and 'whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Cent. Specialties, Inc. v. Large*, 482 F. Supp. 3d 886, 895 (D. Minn. 2020), *aff'd,* 18 F.4th 989 (8th Cir. 2021) (quoting *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

3

In the immigration context, however, "the nature of [due process] protection may vary depending upon [immigration] status and circumstance." *Id.* Noncitizens are entitled to due process "in the context of removal proceedings." *Trump v. J. G. G.,* 604 U.S. 670, 673 (2025) (citing *Reno v. Flores,* 507 U.S. 292, 306, (1993)). But because "Congress may make rules as to aliens that would be unacceptable if applied to citizens," the government "has more flexibility when dealing with immigration." *Banyee v. Garland,* 115 F.4th 928, 931 (8th Cir. 2024) (quoting *Demore v. Kim,* 538 U.S. 510, 526 (2003)).

The proper framework for evaluating Sandhu's arguments "is not well settled." *Singh v. Mullin, et al.,* 2026 WL 1021846, at *3 n.5 (N.D. Iowa Apr. 15, 2026). Some courts turn to the three-factor test from *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976) to determine what process is due. *But see Banyee,* 115 F.4th at 933 (holding that cases like *Zadvydas* and *Demore* "leave no room for a multi-factor 'reasonableness' test" and "have already done whatever balancing is necessary"). *Mathews,* however, was never intended as "an all-embracing test for deciding due process claims." *Dusenbery v. United States,* 534 U.S. 161, 168 (2002). More to the point, the Supreme Court "has not relied on the *Mathews* framework" in "resolving similar immigration-detention challenges[.]" *Rodriguez Diaz v. Garland,* 53 F.4th 1189, 1214 (9th Cir. 2022) (Bumatay, J., concurring) (citing *Demore,* 538 U.S. at 521-31; *Reno,* 507 U.S. at 299-315). Indeed, the Supreme Court "has recently backed away from multi-factorial 'grand unified theor[ies]' for resolving legal issues. *Id.* (citing *Kennedy v. Bremerton Sch. Dist.,* 597 U.S. 507, 534 (2022)) (citation modified).

The Supreme Court has instead generally recognized a spectrum of protections to noncitizens "depending upon status and circumstance." *Zadvydas,* 533 U.S. at 694 (citing *Landon v. Plasencia,* 459 U.S. 21, 32-34 (1982)). Status and circumstance, in turn, "is generalized to the class an alien finds themselves within." *Singh,* 2026 WL 1021846, at *3; *see, e.g., Landon,* 459 U.S. at 35 (re-entry of permanent resident noncitizens); *Zadvydas,* 533 U.S. at 690 (noncitizens found to be removeable but who remain detained). The Court adopts that framework here. Whether Sandhu's re-detention comports with due process, then, turns on his status and circumstances for the class of noncitizens he finds himself within. *Singh,* 2026 WL 1021846, at *3. Key to that analysis is the fact he was initially detained but then conditionally paroled into the United States.

4

At the threshold, it bears emphasizing that Sandhu's status and circumstances differ from the petitioners in *Avila* and *Boubacar.* In both of those cases, the petitioners "entered the United States without inspection or admission"—put differently, they were not detained at the border. *Avila*, 170 F.4th at 1132, *Boubacar,* 2026 WL 972708, at \*1. But Sandhu was. (Filing No. 1 at 1). And instead of keeping Sandhu in detention, ICE released him on his own recognizance on a Form I-220A under 8 U.S.C. § 1226(a)(2)(B). (Filing No. 1-2); *see, e.g., Ortega-Cervantes v. Gonzales,* 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the . . . phrase 'release on recognizance' [is] another name for 'conditional parole' under § 1226(a)."). That factual distinction is crucial, as the Court explains below.

The Court agrees Sandhu has a liberty interest in his continued release on his own recognizance. To determine whether a conditional release creates a protected liberty interest, at least one circuit has "resolved the issue 'by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*.'" *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (citation omitted). In *Morrissey v. Brewer*, the Supreme Court found that parolees enjoy several "of the core values of unqualified liberty" and build their lives upon "at least an implicit promise that parole will be revoked only if [they] fail[ ] to live up to the parole conditions." 408 U.S. 471, 482 (1972). Given the "grievous loss" caused by revocation of parole, the court held that those released on criminal parole were entitled to due process before having their parole revoked. *Id.*

A noncitizen conditionally paroled into the United States, like Sandhu, is analogous to a criminal parolee. *Dos Santos Silva v. Warden, Lincoln County Detention Center, et al.,* 2026 WL 926725, at \*6 (D. Neb. Apr. 6, 2026). The liberty of a parolee "includes many of the core values of unqualified liberty" and its revocation inflicts the same "grievous loss on the parolee and often on others." *Id.* (citing *Morrissey,* 408 U.S. at 482). The government made Sandhu the same "implicit promise" that his liberty would "be revoked only if [he] fail[ed] to live up to the conditions of release" imposed by his order of his release on recognizance. *Morrissey,* 408 U.S. at 482; *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) (holding that [j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond."). Thus, under *Morrissey* and its progeny, Sandhu has cleared the first hurdle on his due process claim by showing a liberty interest

5

in his continued release on conditional parole. That liberty interest, "at the very least, entitles him to the procedures authorized by Congress." *Singh v. Noem*, 2026 WL 766228, at *6 (D.N.M. Mar. 18, 2026).

Based on the facts and circumstances of this case, the Court also finds that even the "minimal procedural due process rights [Sandhu] is statutorily afforded" were violated. *Id.* Under 8 U.S.C. § 1226(b), the government "at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." *Id.* An implementing regulation provides:

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9).

There is no question the statute gives the government "immense discretion." *Singh,* 2026 WL 766228, at *8. But as the regulation shows, that discretion must be exercised by *someone*. Here, there is no evidence a "district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge" exercised discretion to revoke Sandhu's conditional parole. In fact, the section of Sandhu's order of release on recognizance titled "Cancellation of Order" is blank. (Filing No. 1-2 at 1). That suggests "no officer, let alone a listed officer, revoked [Sandhu's] conditional parole." *Singh,* 2026 WL 766228, at *8. It appears, based on the evidence before the Court, the government failed to comply with the statutory and regulatory regime governing revocation here. *See, e.g., Pena Becerra v. Sparks, et al.,* 2026 WL 915439, at *6 (D. Utah Apr. 3, 2026); *Sierra Immigr. & Naturalization Serv.,* 258 F.3d 1213, 1218 (10th Cir. 2001) (recognizing that a noncitizen is entitled to the "procedure authorized by Congress"). Put differently, there is no evidence Sandhu's conditional parole was revoked to begin with.

Beyond the *who* may revoke Sandhu's conditional parole*,* there is also no evidence as to *why* it was revoked*.* "Aside from the minor traffic violation that tipped ICE to [Sandhu's] status, the [Federal Respondents] offer[ ] nothing to suggest that [Sandhu] failed to abide by the

conditions of his bond." *Singh,* 2026 WL 1021846, at *4. As things stand, the Federal Respondents have made no showing of any changed circumstances justifying revocation of Sandhu's conditional parole. To revoke Sandhu's conditional parole "arbitrarily—without process and with no allegation of changed circumstances or violation by [Sandhu]—is fundamentally unfair." *Betancourth v. Tate,* 2026 WL 638482, at *3 (S.D. Tex. Mar. 6, 2026); *see also, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, (1974) ("[A] person's liberty is equally protected [by the due process clause], even when the liberty itself is a . . . creation of the State."). Further, even if there *was* a reason Sandhu's conditional parole was revoked, there is no evidence he was ever given notice or an opportunity to respond. *Cf. Abdi v. Trump,* 2026 WL 560130, at *3 (D. Neb. Feb. 27, 2026) (noting that the government failed to afford a habeas petitioner "an opportunity to respond to the reasons for revocation stated in the notification because there were none"). Due process requires more. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985).

In sum, the Court finds that Sandhu has shown a liberty interest in his continued release on his own recognizance. Revocation of Sandhu's conditional parole and his re-detention— particularly without notice of the revocation and an opportunity to respond—fell short of the process he is due. Sandhu has therefore cleared the second hurdle on his procedural due process claim.

None of the arguments the Federal Respondents made—or could make—to the contrary are persuasive. Their position is premised entirely on *Avila* and decisions from courts in this district in its wake, like *Boubacar.* But as the Court explained above, those cases are of little help here, where there are key factual wrinkles—namely Sandhu's initial detention and, most importantly, his release on conditional parole into the country. *See Dos Santos Silva,* 2026 WL 926725, at *1 (noting that a similarly situated petitioner's claims "raise[d] other issues of law and fact" than those in *Avila*).

Perhaps the only other argument the Federal Respondents could have made is that Sandhu's citation for failing to stop at a weigh station in Iowa justified revocation and re-detention. Recall that Sandhu's order of release on recognizance provided that he had to comply with certain conditions, including "not violat[ing] any local, State or Federal laws or ordinances." (Filing No. 1-2). But the citation itself "in no way proves that [Sandhu] violated any law or committed any crime[.]" *Pena Becerra,* 2026 WL 915439, at *4. A citation is nothing more than an accusation.

7

There is no evidence that Sandhu was *convicted* of the traffic violation—and critically, as outlined above, there is no evidence that ICE actually relied on the citation to revoke Sandhu's conditional parole. Without more, the Court would not be persuaded that Sandhu's traffic citation could justify his re-detention even if the Federal Respondents had made that argument.

Having found Sandhu entitled to habeas relief, the Court turns to the remedy. In Sandhu's view, "[i]mmediate release" is "appropriate[.]" (Filing No. 8 at 8). The Court agrees. "The typical remedy" for a successful habeas petitioner "is, of course, release." *Munaf,* 553 U.S. at 693. And here, as explained above, there is no evidence suggesting Sandhu's conditional parole was properly revoked. A lesser measure, like ordering a bond hearing,[2] "cannot cure the fact that [Sandhu] is detained while his conditional parole is still ongoing because it has not been properly terminated." *Singh,* 2026 WL 766228, at *10. To remedy that breach, Sandhu must be released and put in the same position he was in before his re-detention—i.e., on conditional parole subject to the conditions set out in the order of release on recognizance. *Singh,* 2026 WL 1021846, at *4.

Nothing in this order precludes the government from seeking to revoke Sandhu's conditional parole in the future if circumstances warrant his re-detention under the terms of his order of release on recognizance. But if the government elects to pursue that outcome, it must "conform itself to the promises it made and justify the change based on [Sandhu's] individual circumstances." *Id.* To comport with due process, that means the government would need to provide Sandhu with notice and a pre-deprivation hearing, in which the government bears the burden of establishing by clear and convincing evidence that Sandhu is a flight risk or danger to the community. *Id.; see also, e.g., Pena Becerra,* 2026 WL 915439, at *7; *Arostegui-Maldonado*

---

[2] The Court acknowledges the alternative findings regarding flight risk and danger that the immigration judge made in her order denying Sandhu's request for a custody redetermination. (Filing No. 1-3). In this Court's view, they do not dictate a different outcome for two reasons. *First,* given the immigration judge *denied* Sandhu's request for a bond hearing, the Court doubts Sandhu received an individualized assessment of flight risk or danger. *Cf. Demore,* 538 U.S at 531 (Kennedy, J., concurring) (reasoning that "due process requires individualized procedures to ensure there is at least some merit to the" charge and detention). *Second,* the Court questions the immigration judge's flight risk reasoning given that ICE released Sandhu from detention and conditionally paroled him into the United States around four years earlier, when he had just entered the country and had no ties to the United States. If Sandhu was not a flight risk in 2022, it is difficult to see how he could have become one by 2026.

*v. Baltazar*, 794 F. Supp. 3d 926 (D. Colo. 2025) ("As a general matter, the Supreme Court has long held that the clear and convincing evidence standard applies to civil detention where an individual's liberty interest is at stake."). Accordingly,[3]

**IT IS ORDERED:**

1. Petitioner Rohit Sandhu's petition for a writ of habeas corpus (Filing No. 1) is granted.

2. Respondents shall release Petitioner from custody within twenty-four hours, subject to the conditions he was required to comply with immediately prior to his re-detention.

3. The Federal Respondents shall file a status report regarding Petitioner's release within three days of the Court's Memorandum and Order.

4. If the government wishes to again re-detain Petitioner pending his removal proceedings, it must provide Petitioner with sufficient notice and a hearing before an immigration judge. At such a hearing, the government will be required to prove by clear and convincing evidence that Petitioner poses a flight risk or danger to the community.

5. A separate judgment will be entered.

Dated this 28th day of April, 2026.

BY THE COURT:

Susan M. Bazis
United States District Judge

---

[3] Given the Court's finding that Sandhu is entitled to habeas relief on procedural due process grounds, it need not reach the other claims raised in his petition.

9